Alan Johnston (ISBN 7709)
MURRAY ZIEL & JOHNSTON, PLLC
770 South Woodruff Avenue
Idaho Falls, Idaho 83401
Telephone: (208) 528-4188
Facsimile: (208) 524-2051
Email: alan@murrayziel.com

Attorneys for Defendant WALTER HIGH EAGLE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| UNITED STATES OF AMERICA,  Plaintiff, vs. WALTER HIGH EAGLE, Defendant. | Case No. CR-2020-193-BLW  **DEFENDANT'S SENTENCING MEMORANDUM** |

COMES NOW the Defendant, Walter High Eagle, by and through his attorney of record, Alan Johnston of the law firm Murray, Ziel, & Johnston, PLLC, and submits his Sentencing Memorandum in the above-captioned matter as follows:

### WALTER'S HISTORY AND CHARACTORISTICS

Walter has endured, and in many ways succeeded, through numerous hardships in his life. Walter was born and raised on the Fort Hall reservation. His parents coupled strict parenting with a dependance of alcohol. This dysfunctional combination resulted in a traumatic childhood. Walter's parents consumed significant alcohol, sometimes drinking for days at a time. The result of the excessive alcohol was violence and anger.

Walter's parents required him to keep the house immaculate. Any failure to keep the house as expected could result in physical abuse. Walter has recounted one occasion when Walter was 8 years old when his father hit him in the head, which caused Walter to hit his head on a dresser in the room. He was then thrown around the room. As a result, Walter had numerous interior and exterior stiches. This is just one example of a childhood full of violence by Walter's parents.

Among the violence Walter witnessed was his mother being forcibly raped by a man when Walter was very young. Walter told his father about the incident, and his father violently beat the man. Walter's father accelerated his drinking after that incident, and the home was even more dangerous than before.

When Walter was 8 or 9 years old, Walter witnessed his brother attempt to hang himself. He also witnessed his father repeatedly beat his mother. Walter's childhood was full of fear, and being required to care for himself and siblings when he was far too young. As reported by probation, Walter took the ACE survey and scored a 9. As set forth in the PSR, those with an ACE score of 6 or above are at risk of having their lifespan shortened by 20 years.

When Walter was 15, his home caught on fire, and Walter bravely pulled his mother from the burning home and saved her life.

While Walter has had his issues with the law over the years, he has also been a family man and a man of the community. Walter is appropriately proud of his Native American heritage, and desired to help keep his community clean and visually appealing. On his own, Walter approached the Tribal Government about starting a salvage business to remove unwanted garbage and unseemly items from the reservation. Walter was granted a license to work a

salvage business. Although the business did not make Walter wealthy, Walter definitely felt a higher purpose in the business, doing what he could to make the reservation and the earth clean.

It should not be surprising given Mr. Eagle's childhood that he has a history of mental health issues, including PTSD, depression, and bipolar affective disorder; for which he was being treated on the reservation for years before this incident.

## FACTS OF THIS CASE

Mr. Eagle takes responsibility for his behavior, and admits his guilt that lead to his plea. On July 17, 2020, Mr. Eagle engaged in conduct for which he is ashamed. At the time he recognized that he was experiencing a mental health crisis. As a result, while Mr. Eagle was in his home, surrounded by SWAT officers, Mr. Eagle asked to speak to his counselor. Law enforcement denied this request, and the stand-off continued for a while. Mr. Eagle did fire his gun, though not as many times as is suggested in the PSR, and he was not attempting to hit law enforcement when he fired his gun. Mr. Eagle did surrender to law enforcement after the stand off.

## VARIANCE

In his objection to the Presentence Report and Request for Variance, Mr. Eagle gave notice that he intended to seek a variance from the sentencing guidelines. Mr. Eagle requests a variance placing his sentence at 120 months. In determining this variance, Mr. Eagle asks the Court to consider the violent nature of his upbringing, his mental health diagnosis, and his service to his family and community which reflects a person of service.

When sentencing an individual, the Court is required to find how best to comply with 18 U.S.C. §3553(a) and its requirement to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. The sentencing guidelines are a part of

the Court's determination, but the guidelines are advisory, not mandatory. *U.S. v. Booker*, 543 U.S. 220 (2005). In carrying out its post-Booker sentencing duties, the district court may not presume that the Guideline range is reasonable. *Rita v. United States*, 551 U.S. 338, 351 (2007); *Gall v. United States*, 128 S.Ct. 586, 596B97 (2007). The Guidelines are not to be given any more or less weight than any other factor under § 3553. *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007).

Other factors instruct the Court to impose a sentence to "(A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

### A. MR. EAGLE'S VIOLENT UPBRINGING

As set forth above, Mr. Eagle was subjected to violence early and often as a child, both as a witness and a victim. Mr. Eagle's father was a very violent man, and he regularly and brutally beat Mr. Eagle and his family. As a result, Mr. Eagle learned to be in a state of fear from a young age, which explains his diagnosis of PTSD today. Mr. Eagle witnessed the brutal rape of his mother. Mr. Eagle witnessed his brother's attempt to take his own life. To a degree, it is laudatory that Mr. Eagle has the positive attributes he has today. This violent upbringing has had a significant impact on Mr. Eagle, and his high ACE score is not surprising. It is the position of the Defense that the Court should incarcerate Mr. Eagle for a shorter period of time so Mr. Eagle can receive treatment for his childhood trauma.

B.   MR. EAGLE'S MENTAL HEALTH

Mr. Eagle has been diagnosed with PTSD, depression, and bipolar affective disorder. Given the nature of his childhood, it is not overly surprising that his mental health would take a toll. Mr. Eagle was clearly experiencing some kind of a mental health episode when he committed the crime in this case, and he did reach out for help; asking the SWAT officers to allow him to talk to his counselor. For reasons unknown, SWAT did not allow him that opportunity. Regardless, Mr. Eagle was able to recognize that he needed mental health assistance.

It is the same now. Mr. Eagle realizes that he needs help with his mental health, and though he has received counseling and help for mental health issues in the past, the help of a supervisor to secure the treatment Mr. Eagle needs would be beneficial. This can only occur outside a prison setting, meaning it is appropriate for Mr. Eagle to receive less time on his sentence.

C.   MR. EAGLE'S HISTORY OF SELFLESSNESS

It is important for the Court to recognize that Mr. Eagle's crime does not define him as a person, and that Mr. Eagle has a long history of helping people and his community. Mr. Eagle was willing to place himself in danger at a young age when he entered his home while it was on fire to save his mother. Mr. Eagle enjoys helping people. He has been a positive mentor for people in the jail, encouraging them to abandon self-destructive behaviors. Despite his shortcomings, Mr. Eagle is selfless.

That selflessness can be seen in Mr. Eagle's choice of profession. Mr. Eagle did not engage in his salvage business to get rich. As the Court can see from the PSR, Mr. Eagle did not earn a living wage from this business. However, Mr. Eagle started his business for a higher

purpose; to clean the earth. Frankly, this is a very laudatory choice by Mr. Eagle, and shows his desire to serve his community. The Defense asks the Court not to overlook this community service.

Thus, Mr. Eagle recommends that the Court grant him a variance from the guidelines because the guidelines are merely advisory, and Mr. Eagle's life and circumstances are not well categorized by the guidelines. Mr. Eagle asks the Court to grant him a variance, and decrease his guideline range to the statutory and guideline minimum of 120 months. He recommends that his offense level decrease to a level 29 (a decrease of approximately three levels), and that he be thus sentenced.

## RECOMMENDATION

Pursuant to the federal sentencing guidelines, Mr. Eagle's guideline range with a criminal history category III, and an offense level 15, increased by 120 months, Mr. Eagle's pre-variance guideline range is 144 to 150 months. However, Mr. Eagle's life and characteristics, as well as the trauma he has endured and his mental health issues, make the guidelines an unfair summary of the factors the Court should consider when sentencing Mr. Eagle.

Mr. Eagle asks the Court to consider those factors and grant him a variance of three levels, and sentence him to the statutory minimum of 120 months.

Mr. Eagle also requests that he receive credit for the time he has been incarcerated while this matter has been pending.

In addition, the PSR is clear in paragraph 158 that Mr. Eagle has a history of substance abuse, including marijuana and methamphetamine. Mr. Eagle requests that he be allowed to participate in the Residential Drug Abuse Program (RDAP) while incarcerated due to his

addictions and the role illegal substances had in his crime.  Mr. Eagle will make a recommendation for housing at the time of sentencing.

DATED THIS 12th day of December, 2022.

                                                MURRAY ZIEL & JOHNSTON, PLLC

                                                /s/

                                                ALAN JOHNSTON
                                                Attorney for Defendant

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT, I caused a true and correct copy of the foregoing DEFENDANT'S SENTENCING MEMORANDUM to be electronically filed with the Clerk of the Court and using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

> JACK HAYCOCK, ESQ
> U.S. ATTORNEY'S OFFICE
> 801 Sherman, Ste. 192
> Pocatello, ID 83201

/s/
ALAN JOHNSTON
Attorney for Defendant